JUDSON S. HALL *vs.* JOHN HALL ET ALS.

Third Judicial District, Bridgeport, October Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In reviewing a ruling upon demurrer, this court will adopt that construction of the demurrer upon which all the parties practically agreed and which was followed by the trial court in reaching its conclusion.

A son, merely as such, has no legal interest in his father's property, and therefore cannot maintain an action to have a transfer of it, made by the father when capable to act, set aside because of alleged fraud

Hall *v.* Hall.

practiced upon him by the grantees. Such an action lies only by the father himself against whom the fraud was directed, or, in case of his death, by his personal representative, or by those to whom the grantor owed some debt or duty which would be avoided or violated if the transfer made by him were permitted to stand.

In the present case, which was an action at law by a son to recover damages from his brothers and sister for fraudulently procuring, from their incapable father, a will in favor of the defendants, and thus depriving the plaintiff of his inheritance or statutory share of the property, it appeared from the further allegations of the complaint that the validity of the will had been established by its admission to probate in a proceeding to which the plaintiff, by his conservator, was a party, and that no appeal had been taken from the probate decree, having been prevented by the fraud of the defendants. *Held* that the plaintiff could not prevail unless he could successfully attack the decree upon the ground that it was procured by fraud practiced not upon him but upon the Court of Probate; and that he could do this only in an equitable proceeding instituted for the express purpose of vacating the decree or avoiding its legal effect, or of enjoining its enforcement.

It is an elementary principle of law that a party to a judgment of a court of competent jurisdiction can never attack the judgment collaterally; and this principle, in the interest of the common safety and repose of mankind, applies with even greater force to probate decrees, inasmuch as General Statutes, § 194, restricts the right of collateral attack by strangers to cases of fraud, and prevents the decrees from being set aside save by appeal.

Argued October 26th, 1916—decided March 8th, 1917.

ACTION to recover damages for wrongfully depriving the plaintiff of his prospective inheritance, brought to and tried by the Superior Court in New Haven County, *Tuttle, J.*, upon demurrer to the complaint; the court sustained the demurrer and, upon failure of the plaintiff to plead over, rendered judgment for the defendants, from which the plaintiff appealed. *No error.*

The complaint is in two counts, and the substance of it, as stated on the appellant's brief, is that the defendants by fraud and conspiracy acquired for themselves, and deprived the plaintiff of, one fourth of his father's property which he would otherwise have inherited, and by fraud and conspiracy procured the false

imprisonment of the plaintiff. In particular it is alleged that the plaintiff and the defendants were the only children of Seth J. Hall, deceased, that on or about January 1st, 1909, the defendants, who are the two brothers and the sister of the plaintiff, entered into a conspiracy to deprive and defraud the plaintiff of any share in the estate of their father, who was then alive; that in pursuance of this conspiracy the defendants made false representations to the father as to the plaintiff's sanity, and by that and other means fraudulently obtained from the father, who was then physically and mentally feeble, certain transfers of property and releases of mortgages; and that on May 25th, 1909, when the father was incapable of making a will, they obtained from him by undue influence and duress a pretended will giving to them all of his estate, of the value of more than $500,000, except the life use of $25,000 to the plaintiff. It is further alleged that the father died May 27th, 1909, and that in pursuance of the foregoing conspiracy the defendants presented the will for probate on June 1st, 1909, and that it was admitted to probate on June 18th, 1909; that the defendants, on June 1st, 1909, procured the arrest of the plaintiff and his confinement in the Connecticut Hospital for the Insane, until he escaped in April, 1910, and in the following September again procured his arrest and confinement until he escaped for a second time in April, 1912; that in June, 1909, they procured the appointment of the Meriden Trust and Safe Deposit Company as conservator of the person and property of the plaintiff, and by false and fraudulent representations prevented the conservator from opposing the probate of the will or taking an appeal therefrom. The first count then alleges that by reason of the conspiracy and acts done in pursuance thereof, the defendants deprived the plaintiff of a one-fourth interest

in the father's estate of the value of more than $250,000.

The second count recites by reference most of the above allegations, and lays the foundation for a claim for damages for false imprisonment.

The only relief demanded is money damages.

Section A of the defendants' demurrer is addressed to the first count, in so far as the same purports to set forth a cause of action for depriving the plaintiff of a right to one fourth or any interest in the property transferred to the defendants during the father's lifetime, on the ground (1) that it was the absolute property of Seth J. Hall, and (2) that the transfer, if invalid, could only be set aside after Mr. Hall's death, by his executor. Section B of the demurrer is addressed to the first count in so far as it purports to set forth a cause of action for depriving the plaintiff of a right to a legacy or devise under the will of Seth J. Hall, (1) on the ground that the property was the absolute property of Seth J. Hall, and (2) because the will has been duly probated and its validity cannot be questioned elsewhere than in the Court of Probate for the district of Meriden, or by appeal therefrom.

The second count was demurred to to the same extent and upon the same grounds.

These demurrers were sustained, and although they left the second count of the complaint untouched, so far as the cause of action for false imprisonment was concerned, the record shows that judgment was entered for the defendants because, as stated in the judgment-file, the plaintiff failed to plead over. Nevertheless the plaintiff has not appealed on that ground, and the only reason of appeal presented by the record is that the court erred in sustaining the defendants' demurrer.

*Tracy Waller*, with whom was *Robert K. Waller* of New York City, for the appellant (plaintiff).

*George D. Watrous* and *Hugh M. Alcorn,* for the appellees (defendants).

BEACH, J. Section B of the demurrer is defective in form. It relates on its face to an alleged cause of action "for depriving the plaintiff of a right to a legacy or devise under the will of Seth J. Hall." Literally speaking, no such cause of action is attempted to be stated in the complaint, which admits that the plaintiff has received the benefit of his legacy under the will; to wit, the life use of $25,000. The parties in the trial court and in this court have treated this branch of the demurrer as if it related to the cause of action for depriving the plaintiff of his inheritance by fraudulently procuring the execution of a pretended will, and fraudulently preventing him and his conservator from opposing the probate of the will, and from appealing from the decree admitting it to probate. The trial court so treated the demurrer in its memorandum of decision, and the plaintiff's counsel refused to plead over on the theory that by such decision his principal cause of action had been wiped out of the complaint for reasons which made it impossible to reinstate it by amendment. Under these circumstances we adopt that construction of the demurrer which has been practically agreed on by the parties in interest.

As to the cause of action founded on the alleged fraudulent procurement of transfers of property and releases of mortgages in the lifetime of the father, the defendants' demurrer seems to be well taken. The complaint alleges that at the time of these transfers the grantor was physically and mentally feeble and unable to properly manage his affairs, but there is no sufficient allegation that he was then incapable of making an intelligent transfer of property. That being so, Mr. Hall had a legal right to do as he pleased with

Hall *v.* Hall.

his property, and as the plaintiff had no legal interest therein he suffered no legal wrong by the transfers. It is well settled that the only persons who can maintain an action to set aside transfers of property on the ground of fraud, other than the grantor, or after his death, his personal representatives, are those to whom the grantor owed a debt or duty which will be avoided or violated if the transfer is permitted to stand. Thus, in *Ullrich* v. *Ullrich*, 68 Conn. 580, 37 Atl. 393, it was held that a wife had no standing in court to set aside a voluntary transfer of property made by her husband to his brother, after she had threatened to sue for divorce and alimony and to attach her husband's property; and in *Harris* v. *Spencer*, 71 Conn. 233, 236, 41 Atl. 773, it is said that a husband married since 1877, and therefore entitled to an interest in his wife's property after her death, has no legal interest sufficient to maintain a suit to set aside a voluntary transfer of the wife's property made in her lifetime. So in this case, it matters not whether these transfers were procured by fraud, for it does not appear that the plaintiff's father owed him any debt or duty which might be avoided or violated thereby. The alleged fraud in procuring these transfers was a fraud practiced upon the father and not upon the plaintiff, and so the personal representatives of the deceased grantor are the only persons who can maintain an action to set these transfers aside.

As to the cause of action for damages for depriving the plaintiff of his inheritance by the defendants fraudulently procuring the execution of the pretended will in their own favor, the complaint stands on a different ground, for it alleges that at the time when the so-called will was executed the testator was mentally incapable of making a will. In view of this allegation it cannot be said that the testator had a right to dispose of his property by will as he saw fit. He no longer

possessed that right, after he became, as alleged, incapable of understanding the effect of a will. It is possible that if the complaint had stopped at this point of the narrative it might have stated a good cause of action against the defendants for fraudulently procuring their incapable father to execute a pretended will in their favor, when coupled with the allegation that they had in fact obtained the benefit of it. We have, however, no occasion to determine that point, for the complaint goes on to allege that the defendants, on June 18th, 1909, fraudulently procured the admission of this pretended will to probate in the Court of Probate for the district of Meriden, and fraudulently prevented the plaintiff or his conservator from opposing the probate of the will and from taking any appeal therefrom. It thus appears on the face of the complaint that the validity of the will has been determined by the Court of Probate in a proceeding to which the plaintiff, by his conservator, was a party, and that the defendants now hold the estate by virtue of a decree of probate which cannot be attacked collaterally except for fraud, or set aside save by appeal.

The defendants have, therefore, on the face of the complaint a good legal defense to the action viewed as an action at law sounding in tort; and as the time for appeal has long since expired, the plaintiff cannot now prevail unless he successfully attacks the decree on the ground that it was procured by fraud on the Court of Probate. The complaint contains sufficient allegations of fraud practiced on the court, but these allegations are not followed up by any appropriate prayer for equitable relief, such as a prayer for an injunction to restrain the defendants from setting up the probate of the will as a bar, or that the defendants should be ordered to account for the estate in their hands as intestate estate notwithstanding the decree. *Holcomb*

v. *Gillet*, 2 Root, 448.　On the contrary, the only prayer for relief is a prayer for damages, and thus the only fraud in respect of which the plaintiff moves the court for a remedy is the fraud upon the plaintiff himself and not the fraud upon the Court of Probate.　The complaint is drawn on the theory that the defendants are liable directly to the plaintiff for the fraud practiced upon the plaintiff, and it ignores the fact that the decree of the Court of Probate stands in the plaintiff's way unless and until he obtains an adjudication removing it from his path.　The plaintiff could of course have asked for both legal and equitable relief in the same action, but he cannot, in the face of a decree affirming the validity of the will, demand damages on the theory that the will is void, without first asking that the legal effect of the decree be avoided or the defendants enjoined from setting it up as a bar to the action.

The plaintiff's claim on this point is that his complaint is in the nature of a collateral attack on the decree for fraud, and is therefore expressly authorized by § 194 of the General Statutes.　It is, however, an elementary principle that a party to a judgment of a court of competent jurisdiction can never attack it collaterally; and that the only way in which he can attack it, save by appeal, is by a proceeding directly instituted for the very purpose of vacating it, or avoiding its legal effect, or enjoining its enforcement.　That this principle applies to probate decrees is clear, for we have frequently held that they have the same conclusiveness *inter partes* as a judgment of any other court of competent jurisdiction.　See cases collected in *Delehanty* v. *Pitkin*, 76 Conn. 412, 420, 421, 56 Atl. 881.

Section 194 of the General Statutes has never been supposed to open probate decrees to collateral attack by parties and privies on the ground of fraud, and thus to make them less conclusive than other judgments of

courts of competent jurisdiction. On the contrary, it imparts to them additional conclusiveness, for it restricts the right of collateral attack by strangers (as in *Cook* v. *Morris*, 66 Conn. 137, 33 Atl. 594) to cases of fraud, and prevents them from being set aside save by appeal.

The reason is that it is necessary "for the common safety and repose of mankind" (*Johnes* v. *Jackson*, 67 Conn. 81, 90, 34 Atl. 709) that the decrees of a Court of Probate acting within its jurisdiction in the settlement of estates should be given the same conclusive effect as sentences and proceedings *in rem*. See *State* v. *Blake*, 69 Conn. 64, 78, 79, 36 Atl. 1019, and cases cited. All of these decisions are utterly inconsistent with the plaintiff's theory that he can ignore the conclusive character of the decree, and can, simply by alleging fraud, clothe himself with a right to relitigate the validity of the will in an action for damages.

As early as 1803 this court held that a party to an arbitration and award could not maintain *indebitatis assumpsit* to recover back money paid pursuant to the award, on the ground that it had been procured by fraud. It was said that the plaintiff might in a proper case have the award annulled by a decree in chancery for corrupt practices in procuring it, but that "he can never leap over it, treating it as void, and litigate his right anew, by commencing an action, as if it had not been made; and, in a collateral manner, attack its validity." *Bulkley* v. *Stewart*, 1 Day, 130, 133. So in *Peck* v. *Woodbridge*, 3 Day, 30, 36, it was held that an action on the case for obtaining a decree of redemption of mortgaged premises by false and forged evidence could not be maintained while the decree was still in force; and that the decree could only be impeached, at the instance of a party, by a writ of error, petition for a new trial, or bill in chancery. That is precisely this

case, but for the circumstance that the decree which the plaintiff attempts to "leap over" is a decree of probate instead of a decree in chancery. This difference is immaterial, except that since a Court of Probate has no power to vacate its own decrees or to grant a new trial, the plaintiff's only remedy is by bill in chancery, or by its modern equivalent, a prayer for equitable relief annexed to an appropriate complaint.

The defendants' brief cites a number of cases from neighboring States to the point that an action at law for damages for having obtained a judgment by corrupt practices cannot be maintained by a party to the judgment while the judgment remains in force. Some of these decisions go on the ground that so long as the judgment remains in force the plaintiff cannot claim to have been legally wronged by it. Others on the ground that to maintain the action would be in effect to grant a new trial of the former case in a collateral proceeding. All of them agree that a party to a judgment cannot impeach it except in a proceeding directly brought for that purpose. *Dunlap* v. *Glidden,* 31 Me. 435; *Engstrom* v. *Sherburne,* 137 Mass. 153; *Hillsborough* v. *Nichols,* 46 N. H. 379; *Cunningham* v. *Brown,* 18 Vt. 123; *Smith* v. *Lewis,* 3 Johns. Rep. (N. Y.) 157; *Chaloner* v. *Sherman,* 242 U. S. 455, 462, 37 Sup. Ct. 136. See also *Carpenter* v. *M. J. & M. & M., Consolidated,* 129 C. C. A. 388, 394, 212 Fed. Rep. 868, 874.

Regarded as an attempt to state a cause of action for damages for depriving the plaintiff of his inheritance, the complaint is insufficient because it attempts to retry in a collateral proceeding the question of the validity of the will in the face of the outstanding decree of probate, which, as between the parties, affirms its validity; and because it attempts to go to the jury on the question of damages for the deprivation of the inheritance by a short cut, without first asking the

court as a court of equity to treat the decree as inoperative between the parties for the purposes of this action, or to prevent the defendants from setting it up as an estoppel of record. In all of the cases relied on by the plaintiff equitable relief of the character above suggested was asked for.

There is no error.

In this opinion PRENTICE, C. J., THAYER and RORABACK, Js., concurred; WHEELER, J., concurred in the result.